# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| FINANCE OF AMERICA REVERSE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> NESTOR A. CARMONA-VARGAS, ET AL., <br><br> Defendants. | Civil No. 16-1661 (SEC) |

**OPINION AND ORDER**

Pending before the Court is Plaintiff Finance America Reverse, LLC's Motion for Default Judgment. ECF. No. 10. The motion is denied without prejudice. Plaintiff is ordered to submit sufficient evidence showing that it complied with several requirements in the mortgage deed prior to filing this action.

## I. Factual and Procedural Background

Plaintiff filed this diversity suit seeking to foreclose a reverse mortgage on the property of Defendants Nestor Carmona-Vargas and Enigdalia Torres-Rodríguez. Plaintiff alleges that Defendants breached their contractual obligations by failing to provide, despite multiple requests, evidence that they had paid "all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner." ECF No. 1, ¶¶ 5-6. Due to this breach, the complaint states, Plaintiff accelerated the debt and declared the obligation secured by the reverse mortgage due and payable. Id. ¶ 4.

The underlying mortgage is secured by the Department of Housing and Urban Development (HUD) under its Home Equity Conversion Program for seniors. Pursuant to section 255(i)(1)(A) of the National Housing Act, 12 U.S.C. 1715z-20, Defendants executed a second mortgage protecting HUD's interest in the property. Plaintiffs therefore joined the United States as a party with a lien pursuant to 28 U.S.C. § 2410. Because neither Defendants nor the United States filed a responsive pleading, Plaintiff moved for default entry and default judgment under Fed. R. Civ. P. 55. Recently, default was entered against those parties, ECF No. 14, and Plaintiff's motion for default judgment is currently pending.

## II.  Standard of Review

Faced with a motion for default judgment, a district court must "exercise sound judicial discretion in determining whether the judgment should be entered." Hutchins v. Cardiac Sci., Inc., 456 F. Supp. 2d 173, 190 (D. Mass. 2006) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2685). Even "[a]fter an entry of default, a court may examine a plaintiff's complaint to determine whether it alleges a cause of action." Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992). This is because while "an entry of default prevents the defendant from disputing the truth of well-pleaded facts in the complaint pertaining to liability," Conetta v. Nat'l Hair Care Ctrs., Inc., 236 F.3d 67, 75–76 (1st Cir. 2001), it does not prevent the Court from testing whether those facts sufficiently state a claim. Id. (citing Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir.), cert. denied, 493 U.S. 858 (1989)). Moreover, under Fed. R. Civ. P. 55(b)(2), a court has considerable discretion "in deciding whether to require plaintiff to produce evidence in support of the claims before entering [a default] judgment." Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984); see also Quirindongo Pacheco, 953 F.2d at 16 ("Under Federal Rule of Civil Procedure 55(b)(2) a court, in its own discretion, may hold a hearing to 'establish the truth of any averment' in the complaint").

### III. Applicable Law and Analysis

HUD's Home Equity Conversion Program provides financial flexibility to seniors by facilitating through insurance "the conversion of a portion of accumulated home equity into liquid assets." 12 U.S.C. § 1715z-20(a)(1). The Program is designed "to meet the special needs of elderly homeowners by reducing the effect of the economic hardship caused by the increasing costs of meeting health, housing, and subsistence needs at a time of reduced income." Id. To further this purpose, the Housing Act provides safeguards against the displacement of homeowners. For instance, HUD may only secure mortgages that specifically state "that the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, the sale of the home, or the occurrence of other events specified in regulations of the Secretary." Id. § 1715z-20(j).

Here, Defendants are evidently not deceased since they were personally served, and Plaintiff does not allege that they sold the mortgaged property. Accordingly, Plaintiff's right to declare the loan obligation due and payable must arise from the occurrence of the events specified in HUD's regulations.

Mirroring the Housing Act, HUD's regulations also require the inclusion of protective clauses in all secured mortgages under the Program. For instance, reverse mortgages must state that when, as here, the reason for accelerating the debt is that the borrower failed to perform an obligation under the mortgage, HUD's approval is necessary before the lender declares the loan due and payable. 24 C.F.R. § 206.27(c)(2).

The reverse mortgage in this case includes language similar to that required by § 206.27(c)(2). Specifically, subsection 9(b) reads:

> **(b) Due and Payable with Secretary Approval**. Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval by an authorized representative of [HUD's] Secretary, if:
>
> …

      (iii) an obligation under this Security instrument is not performed.

ECF No. 1-3, pp. 6-7 (emphasis in the original).

    Moreover, subsection 9(d) provides:

**(d) Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph Nine (a)(ii) and (b). Lender shall not have the right to commence foreclosure until Borrower had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the security instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the property for the lesser of the balance or ninety five percent (95%) of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the lender with a deed in lieu of foreclosure.

Id. (emphasis in the original).

    Under these provisions, before commencing a foreclose action on Defendants' property, Plaintiff was required (1) to seek and obtain authorization from HUD to accelerate the loan obligation, and (2) to notify HUD and Defendants with at least thirty days of anticipation and give them an opportunity to cure the breach. Yet, the complaint is silent on whether Plaintiff complied with the notice and authorization requirements prior to commencing this action.

    The complaint does say that "[a]ll conditions precedent to the maintenance of this action have been performed, excused, waived or have otherwise occurred." ECF. No. 1, ¶ 9. It is unclear whether such a conclusory allegation is sufficient to form the basis of a default judgment. It is true that Fed. R. Civ. P. 9(c) states that "[i]n pleading conditions precedent, it suffices to *allege generally* that all conditions precedent have occurred or been performed." (Italics added). However, following the Supreme Court decision in Ashcroft v. Iqbal, 556 U.S. 662 (2009), which analyzed similar language in Rule 9(b),

some Courts have held that under Fed. R. Civ. P. 9(c), the "pleading of a plaintiff's own performance is subject to the same pleading standard as other allegations, i.e., the plausibility requirement set out in Iqbal." Uncas Int'l LLC v. Crimzon Rose, Inc., No. 16-9610 (JSR), 2017 WL 2839668, at *3 (S.D.N.Y. June 26, 2017); see also Dervan v. Gordian Group LLC, Civ. No. 16-1694 (AJN), 2017 WL 819494, at *5 (S.D.N.Y. Feb. 28, 2017); O.F.I. Imports Inc. v. Gen. Electric Capital Corp., Civ. No. 15-7231 (VEC), 2017 WL 3084901, at *5 (S.D.N.Y. July 20, 2017); and Chesapeake Square Hotel, LLC v. Logan's Roadhouse, Inc., 995 F. Supp. 2d 512, 517 (E.D. Va. 2014) ("Assuming, without deciding, that the Supreme Court's interpretation of the language in Rule 9(b) extends to the nearly identical language in Rule 9(c), thus requiring more than a conclusory statement indicating that 'all conditions precedent have been satisfied'"). But even if such a conclusory allegation sufficed, given the purpose of HUD's Home Equity Conversion Program and the safeguards against home displacement contained therein, the Court, in its discretion, would still require Plaintiff to produce evidence that it obtain HUD's approval prior to commencing this suit.

For the reasons stated, the Court will exercise its discretion and deny Plaintiff's motion for default judgment without prejudice, pending the submission evidence showing that it complied with the aforementioned requirements prior to filing this action. See Bermudez, 733 F.2d at 21; Quirindongo Pacheco, 953 F.2d at 16.

Plaintiff is thus **ORDERED** to submit dated documentation showing that it requested evidence of the relevant payment of property charges from Defendants. Plaintiff must also submit evidence showing that HUD gave its authorization to declare the obligation due and payable prior to commencing this action.

Moreover, the Court notes that the complaint insinuates that Defendants never responded to Plaintiff's requests. An affidavit submitted by Plaintiff, however, suggests otherwise. There, a representative of Plaintiff indicates that Defendants "ha[ve] not provided sufficient evidence to corroborate that [they] ha[ve] issued the payments as

required by the Reverse Mortgage." ECF No. 4. (emphasis added). In contrast to the complaint, the affidavit suggests that Defendants did respond to Plaintiff's requests but that Plaintiff deemed their response insufficient. Plaintiff shall clarify this matter. If Defendants did respond to the requests in any manner whatsoever, Plaintiff shall provide a brief summary of their response and explain why the response was deemed insufficient. Of course, Plaintiff shall submit any relevant documentation of Defendant's response that it may have in its possession.

### IV. Conclusion

Plaintiff's motion for default judgment is denied without prejudice.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 23rd day of January, 2018.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
U.S. District Judge